Wait just a second while your opposing counsel finds your seat there. Very well. Go ahead. Good morning, Your Honors. It may please the Court. My name is Max Hirsch, and along with my colleague, Doug Smith, we represent the appellant in this matter in a pro bono capacity. Again, thank you for your involvement. And we are going to try and split the argument today, which I know sometimes is difficult. I will be handling the consent argument as well as the improper evidence admitted at trial argument, while my colleague will be handling the motion for substitution argument. And how are you going to handle rebuttal, or do you care about that? We'd like to try and save two minutes for rebuttal, but that's the goal. Okay. All right. So just briefly, Your Honor, and all of Your Honors sort of touched on this in the past case discussion, this case is even more egregious than the one that was just discussed because when our client sought to withdraw his consent, defendants had not consented. In fact, they had not. That's the difference. And perhaps I was confusing the cases, but in this case there was no consent. They had declined consent. It wasn't that they hadn't acted. They had affirmatively said, we decline consent. Therefore, the case was never referred to a magistrate pursuant to 636C. It was under 636B, but not under 636C. And the reason that is so important, as I believe one of the judges pointed out in the last oral argument, is the good cause standard, which comes from 636C-4, specifically states it only applies when there has been a referral pursuant to 636C. When Mr. Gilmour sought to withdraw his consent, there was not a referral pursuant to 636C. And therefore, the good cause standard of 636C-4 shouldn't have applied. There are multiple cases in the Eastern District that have dealt with this issue, and usually what happens is the district court says, we'll give you a new consent form and you can decline because the status quo hasn't changed, the district court is still adjudicating this case, and the magistrate will be able to oversee discovery matters. That's what should have happened in this case. Instead, the magistrate applied the good cause standard, found there was no good cause, and refused my client's attempts to withdraw his consent. After that happened, almost a year later, defendants finally decided to consent. At that point, for the first time, the case was assigned to a magistrate pursuant to 636C, and he tried the case. Had the motion to withdraw consent been properly adjudicated with no good cause standard, there never would have been mutual consent, the magistrate would not have tried the case, and it should have been the district court. And so there's clear Ninth Circuit precedent that states when that happens, the judgment is annulled, and we need a remand to have the district court try the case. Kennedy. So from your perspective, your client consented, the other side declined consent. Your client then sought removal or sought withdrawal of consent. Actually, none was probably needed because the other side had declined consent, or do you take that position? I think he did need to – I think our position would be he did need to ask to withdraw because had he not asked and had the defendants then consented, I think an argument could be made. He would have been – he would have been back. Right. 636C1 now is in effect, and he'd have to show good cause. But he had to go to the district court to do this. I think we would take the position that, yes, the previous counsel's interpretation of the rule is correct, but regardless, even if the magistrate could oversee this, which maybe he couldn't, there never should have been a good cause standard applied. It should have been, as a matter of course, you can decline your consent because the other side has declined their consent, and the case is currently in front of a district court judge, and that's where it will remain. And that's what should have happened. And the magistrate judge could do that. I think our position would be the magistrate judge can do that, but I think, you know – But he didn't. Right. He didn't. And there are multiple cases where the same magistrate has not done that, so I think there's just maybe a little confusion about – So the practical effect from your perspective is when the district judge sent this for trial, it was improper because there was not mutual consent. Correct. Because the only reason there was a mutual consent was because my client's request to withdraw was improperly denied. There's no standard. Instead, a good cause standard was applied. Had the good cause standard not been applied, he would have been able to withdraw his consent, and there never would have been mutual consent. Okay. But as a practical matter, the case would never get tried if it went to the district court properly, probably, because of the burdens on the district courts. That's possible, Your Honor. I'll just make two quick points in response to that. The first is, at the time my – That's kind of the elephant in the room. Of course. At the time my client sought to withdraw a consent, trial had not even been set yet. This was very early on in the case, and so there was no prejudice or harm as a result from trial coming around the corner. But the second thing I'll say is, it's not just a statute. There is also an Eastern District local rule that mirrors the statute. It's AK-3. It's in the appendix. And that local rule says as soon as someone objects, it's supposed to go to a district court. And so not only do you have the statute, but you have the Eastern District itself, who presumably knows its own availability issues and knows about why magistrates are important, still saying that in cases like this, you know, AK-3 only applies to cases brought by an incarcerated inmate. In cases like this, because of the, you know, equities at stake, we're still going to allow someone to object and go to a district court judge, even if there are concerns about the burden on the district court. If there aren't any more questions regarding consent, I'll quickly move on to – I want to make a couple quick points about the evidence that was admitted at trial. This trial ultimately was about credibility and it was about whose version of events to believe. Their use-of-force expert even testified that if our client was telling the truth, the force was unreasonable. So in other words, this wasn't a run-of-the-mill case where there was a stipulated set of facts and the question was, was force reasonable or not. It was my client claims he proned out or laid down as instructed, whereas the defendant's claim, he didn't lay down. In fact, he tried to join the fight. And so the only operative question on trial was which version of those events to believe. So with that operative question, we now look at the two evidence – excuse me, the two pieces of expert testimony that were challenging. And that would be the gain expert testimony of Officer Hunter and the use-of-force expert testimony of Lieutenant Diaz. As I'm sure this Court is aware, the Ninth Circuit is very concerned about gain expert testimony generally. State of Diaz v. Anaheim talks about it's highly prejudicial. And a perfect example of that is this case. You had testimony about random gains that no one alleged that our client participated in. At one point, the expert turned to the jury and said, these people are in your neighborhood committing crimes. I don't know how that possibly could have been relevant. He went – it was worse than that. He said, quote, the local street that you guys addressing the jury live on, these hits are – that are murders or whatever that's taking place out on the street as far as this criminal enterprise is taking place because of members housed in the California Department of Correction and Rehabilitation. And then he added that it was important, quote, to make sure that we're monitoring everything that's going on so we can prevent murder and different things taking place out on the street, et cetera, et cetera. Correct, Your Honor. The only problem you've got there, we'll hear what the other side has to say, but there is no objection. Right. I want to address that briefly to allow my colleague time to argue substitution. But the brief answer to that, Your Honor, is this testimony was so bad for both the use of force and the gain expert that the Court sua sponte called my client because he was his own lawyer and the other side to a bench conference to talk about it. And the point of making an objection is to make sure that the judge has a chance to flag the issue and has a chance to make a ruling on it. He did that on his own by sua sponte asking the other side for an offer of proof and asking what the point of the testimony was. If there are no more questions, I'm going to let my colleague take over. May it please the Court. My name is Doug Smith. I represent Plaintiff Appellant Dwayne Gilmore, also on a pro bono basis. After being shot by a sponge round and pepper sprayed, Defendant Torres was alleged to have been indifferent to Mr. Gilmore's medical needs. The district court, however, dismissed Mr. Gilmore's deliberate indifference claim against Defendant Torres because Mr. Gilmore did not locate and substitute in the representative of Defendant Torres' estate within the 90 days provided by Rule 25a governing the substitution of parties. As a preliminary matter, Your Honors, the Attorney General admits that they have no stake in the substitution issue because they claim they never represented Defendant Torres' estate or any distributee of unprobated assets of Defendant Torres. It's really unclear why the Attorney General has advanced opposition arguments here on appeal. In any event, the Court erred in dismissing Mr. Gilmore's deliberate indifference claim for four reasons. First, the 90-day clock under Rule 25a was never triggered because the notice of death was never served on the personal representative of Defendant Torres. Rule 25a-1 provides that an action against a decedent must be dismissed if a motion of substitution is not made within 90 days after service of the notice. This Court in Barlow v. Ground, which is dispositive here, held that the 90-day clock is not triggered unless the notice of death is served on the decedent's representative. It's undisputed in this case that the notice of death was never served on the representative of the estate. The proof of service only shows that it was served on Mr. Gilmore, the plaintiff, and for that reason the 90-day clock was never triggered and there was no ground for the magistrate to dismiss the deliberate indifference claim under Rule 25a. Second, Your Honor, defendants, not Mr. Gilmore, should have borne the burden of identifying the personal representative of Defendant Torres' estate. During the course of Mr. Gilmore's six motions to substitute him in the proper party, the magistrate erroneously put the burden on Mr. Gilmore to identify the personal representative. But the burden should have never been on Mr. Gilmore. It should have been on defendants who filed the notice of death. To conclude otherwise would open the door to tactical maneuvering whereby the burden is placed on the party who does not file the notice of death to locate the representative of the estate within 90 days or else have their valid claim dismissed, which could be particularly problematic when, perhaps here, the decedent's estate has not even gone through appropriate yet and we don't even know if there is a personal representative out there to begin with. Here, because defendants filed the notice of death, they, as between defendants and Mr. Gilmore, they were in a far superior position to identify the personal representative. Indeed, the notice of death actually said that defendants were counsel for Defendant Torres. This suggests that an attorney-client relationship may have existed between the attorney general's office and Defendant Torres, even if the attorney general's office did not formally appear in the case yet. Now, the AG in their brief says that, well, there was no clear path to represent Defendant Torres as representative. Well, I fundamentally disagree. There was certainly a clear path. Torres was a State employee. The attorney general represents State employees, including all the other defendants in this action. The record also suggests that the State has contact information for Defendant Torres. Again, he's an employee, and also for his wife, Mrs. Torres. And the record also shows that no later than December 2014, the prison litigation coordinator used that contact information that the prisoner has to contact Mrs. Torres. The burden --" Sotomayor, you're right. I suppose we agree with you. What do we do? I mean, putting this together with the first argument, what is the bottom line here that you have? Right. So this, Your Honor, is a separate issue. So the claim against Defendant Torres was for deliberate indifference. It was dismissed before trial. It was never tried. So the remedy here would be to remand the case back to the district court. The defendant should then file a notice of death identifying the personal representative after that. Then Mr. Gilmour would have 90 days to substitute in the personal representative for Decedent Torres, at which point the personal representative steps into the shoes of Decedent Torres. Now, the complaint had already been filed before the death. So we have a whole new case? It's not necessarily a new case. It's at least a new claim against this defendant. So the representative would step into Defendant Torres' shoes. The complaint had already been filed. Service would then need to be infatuated on the personal representative, which would get personal jurisdiction over the personal representative, and then the case would proceed. And now, at that point, if the, you know, personal representative believes that he or she has defenses to these claims, whether that may be statute of limitations, latches, or whatever else, they can raise those through the normal procedure such as a motion to dismiss. Two other quick points, Your Honor. Third, Rule 25 substitution applies when the decedent dies between the filing and service of the complaint. The defendants had suggested otherwise, but all the cases that they cite rely to involve the situation where the party had pre-deceased the proper filing of the complaint. Again, that's not the situation here. There was a proper filing of the complaint. No one disputes that it was untimely. And then the decedent died before service. I'll also add that service was delayed here by no fault of Mr. Gilmour. There's a statutory screening procedure for inmates who have filed claims against state employees, and that statutory screening procedure took more than a year and a half before finally the district court ordered service on the defendant. And during that year and a half is when Defendant Torres had died. Now, if that statutory screening procedure was not in place, the normal rules, Rule 4, would have applied. Service would have been done within 90 days of the filing of the complaint. Defendant Torres would still have been alive and he would have been served because he didn't die until more than eight years – sorry, eight months after the filing of the complaint. And lastly, Your Honor, the defendants make the assertion that there's a – could be a statute of limitations problem here. Again, there is not because upon substitution, the personal representative steps into the shoes of Defendant Torres and the complaint was timely filed against him. And we'll reserve the rest of our time for rebuttal. Thank you. Very well. Impressive that you could do that and still have some reserved time. That's amazing. Very impressive. Twenty-one seconds. I know, but it's time. It's remarkable. Good morning. Good morning, Your Honors. And may it please the Court, my name is Martha Ehlenbach, and I represent Defendants Appellees Lockhart, Lopez, and Hightower. This Court should not disturb the jury's considered verdict because the district court appropriately allowed expert testimony at trial and applied the correct standards in the jury. But what about all this stuff that came in from Mr. Hunter? As I understand it, the only relevance of his testimony to the issues in the case was to show that the plaintiff was a gang member and, therefore, that rather than lying down as he claimed at the time he was pepper sprayed and so forth, actually he was on gang orders assisting in the melee. But, you know, I can see the relevance of all that, but Mr. Hunter went far beyond that and described in the most graphic terms how this gang was responsible for murders out there, that the jurors themselves would be on, quote, the local street, that you guys live on, you guys being the jury that he was talking to directly at that point, these hits that are murders or whatever. He went on to say that, I don't know what his basis for this is, that a majority of all the Department of Correctional officers that were killed were killed by members of this particular gang. All sorts of stuff, highly, highly emotional, inflammatory, prejudicial. How can you justify that? First of all, Your Honor, I'd like to point out that not only was Mr. Gilmour a gang member, but the two inmates who started to fight were gang members, and one of the inmates who was a gang member was Mr. Hunter. And I don't think that's a very good way to put it. I think it's a very good way to put it, but it's not the case. But that still doesn't respond to my colleague's point. Yes, Your Honor. I mean, hearing the kind of thing that Judge Rakoff has read, that would just scare the heck out of them, wouldn't it? Wouldn't that get them personally involved and make them feel sorry for the officers that were killed? Because basically what they were doing is saying, you know, this guy's a murderer, and he made murder you. That's pretty inflammatory, isn't it? Yes, Your Honor. But what the testimony showed is that there were three officers who were trying to stop Mr. Gilmour from becoming involved and making a fight bigger than it already was. And the jury also heard testimony about their efforts to temper their use of force. There was extensive testimony in the record about the fact that they had other force than Mr. Gilmour versus McMillan. And that's what to me the most important thing is. So are you saying it would not be — supposing he had said to the jury, this guy is a member of the black guerrilla family gang, and regardless of anything else, that is such a bad organization, such an evil organization, that you ought to convict him just because he's a member of that gang? Are you saying, in my obviously extreme hypo, that that would still not be prejudicial? If that was somehow part of the theory of the case, I think there might be a different question there, but that's not what happened here. Well, but isn't that in effect what he said to the jury? No, Your Honor. That is not what he was asking the jury to decide the case about at all. Okay. I can't speak to why he said those things, but the gist of his testimony was really focused on Mr. Gilmour's own motivation for joining this fight. We also have Mr. Gilmour's own admission that he said, I'm not going to help anyone anymore. If we disagree with you and conclude that this was highly, highly prejudicial, what do we do? What's our remedy? Send him back for a new trial? Yes, Your Honor. You would have to if you believe that that testimony was improper. But I would submit that Your Honor should look very closely at the other evidence that was introduced at trial to make that determination, because overall that short piece of testimony was harmless. I'd like to turn to the consent issue. Once Mr. Gilmour freely and voluntarily consented to magistrate jurisdiction, he had no absolute right to withdraw that consent, and he didn't show good cause to rescind consent years into the litigation because his motion was based solely on his disagreement with the magistrate judge's discovery orders. Now, in this case, it is correct that the case had not been referred to a magistrate under the consent provisions of Section 636. But that doesn't end the question, because under this Court's precedent in United States v. Neville and Dixon v. Yilst, it's the initial consent, the voluntariness of consent, that a party, once withdrawn, must actually make some sort of affirmative showing in order to then request to withdraw the waiver. Kennedy. But don't those cases involve where both parties have consented, though? They do involve Section 636. So if there is an issue with the magistrate judge deciding that, then this Court could send it back for the district judge to decide, or this Court could decide it in the first instance because it is a legal question and because Mr. Gilmour's motion itself was not sufficient. But those cases are instructive because they do provide that the consent right in itself is personal to that litigant, and once that litigant voluntarily waives it, there must be some standard then to request to withdraw that waiver. And that's because the other side has not consented. Yes, Your Honor, because the other side's consent is really immaterial to the first party's decision to exercise that right. Counsel, with respect, you're nullifying the whole point of 636C, are you not? That requires the mutual consent of the parties for that provision of the statute to be effective, doesn't it? Mr. Gilmour actually argues that that section doesn't apply at all and that he wasn't required to show good cause in that circumstance. Well, we all know that you have to have consent for that section to apply, right? Do you disagree with that? Correct. You agree with that? That section deals with vacating a reference to the magistrate judge, and that couldn't have happened at this point. Had any of the magistrate judge decided anything that required mutual consent at that point? No, Your Honor. The magistrate judge would issue findings and recommendations. But the issue there was that if that – if we're talking not about vacating a reference to a magistrate judge, but simply a recusal motion, then the magistrate judge could certainly decide that at that point, and that's really what this was. Mr. Gilmour was essentially trying to recuse this particular magistrate because he thought he showed partiality, and the magistrate could certainly have ruled on that. The magistrate judge also looked to a recusal case in deciding the motion to rescind consent, and he looked to the fact that the case had proceeded expeditiously thus far, that, as in Neville – I thought this case had gone on for years. How can that be expeditious? For various reasons, the case – there were a number of issues that – Right, but it's totally gone on for a really, really, really long time, right? I don't know that it was particularly long or unexpected in the life of a district court case. Well, it wasn't expeditious, was it? I wouldn't say it was either more or less expeditious than an average case. You should testify before Congress. In any event, the motion itself – That's cruel and unusual punishment. The motion itself did not show good cause, and it cannot be that Mr. Gilmour, once his right was waived, could then withdraw that waiver without making some showing. And I think Carter v. Sea Land Services is instructive on that issue because it actually points to other circumstances where a party does affirmatively waive a right, for example, a right to a jury trial, and then must make a showing as to why he wants to withdraw that waiver later on in the case. Because the right is personal to the litigant, whether or not defendants had consented shouldn't matter to this Court in deciding whether or not Mr. Gilmour had to make some showing, whether or not it was extraordinary circumstances. I don't think that that would be the case, but it should be good cause. But in this case, it's a question of to whom he makes the showing, right? In this case, it's also a question of to whom he has to make the showing, right? Yes, Your Honor, but if that is the only issue, then this Court could decide whether or not his motion was sufficient in the first instance or remand to the district court to make that determination. I'd also like to address the substitution issue. Officer Torres was deceased before he died, before he was served, and my office did not represent him at any point in the district court action. What's your response to opposing counsel's comment that it took over a year to get through the process of serving a state official to the president? He had submitted it in plenty of time. Is that exculpatory in this case? No, because the simple fact is that Officer Torres just didn't have notice of this lawsuit ever while he was alive. Well, he wasn't served. He wasn't served because of the state procedures. And that was he wasn't served because of the marshal's procedures, that's correct, and because of the procedures for screening of pro se complaints. But that shouldn't affect Officer Torres' lack of notice in this case. I mean, that's really the central issue is whether or not he was represented at that time or had notice of this lawsuit, and he didn't. For that reason, Barlow v. Ground is distinguishable because the 90-day clock did start to run, and Barlow itself acknowledges that when the party filing the suggestion of death doesn't have information about a representative, that that's a different case from the one they addressed. Randy v. K is also similar in that it observes then when it's not the representative of the deceased party filing the suggestion of death. Again, we analyze it differently. But in any event, even if the 90-day clock didn't start, this Court should find that Mr. Gilmour was given plenty of chances to find the proper party for substitution. In fact, he got discovery from counsel for other defendants about the proper party. Counsel did not have that information because counsel did not represent Officer Torres. But what Mr. Gilmour then provided to the Court was a bad faith declaration showing that he'd asked his fiancée to lie to Officer Torres' widow and say, I'm from the Department of Veterans Affairs, and I'm processing a death benefit check. For that reason, I need to know about your, if you represent Officer Torres' estate. So what the District Court was left with was a hearsay declaration where Mr. Gilmour said that he didn't ask the widow of Officer Torres in good faith if she was the proper party for substitution. And Mr. Gilmour also had eight months to substitute. Under those facts, the magistrate judge and then the District Court who adopted the recommendation to dismiss Officer Torres was correct to do so. If Your Honors have no further questions, there was no error during the trial that affected Mr. Gilmour's substantial rights, and the Court applied the correct standards in denying Mr. Gilmour's earlier motions. Very well. Thank you, counsel. Thank you. So you gentlemen have 21 seconds. Wow. Impressive. Wow. A couple very brief points, Your Honors. First, there's no actual evidence that Mr. Gilmour is in a gain. There's no gain affiliation as part of his file. That was entirely speculative. Second, the other side is wrong to say that the defendants knew about Mr. Gilmour's alleged gain affiliation at the time of the incident. Quoting from the transcript, question, what gain am I a part of? Answer, at the time, I don't know. At the time and why I pepper-sprayed you didn't have anything to do with that. None of the defendants knew about Mr. Gilmour's alleged gain. Quickly, third, by defendants' read of 636C4, that would make it superfluous that it says under the subsection. Obviously, that means under the subsection. Two more quick points, I promise. Gilmour had a viable claim for the deliberate indifference as the magistrate ruled with the screening order. So under their read, that good claim goes away because of screening order procedures. There's no case saying the burden should be on him. That's improper. And finally, as to what this court should do on remand, we believe substitution should be allowed, which would reinstitute the deliberate indifference claim. The trial should be re-held by a district court judge because the consent should have been properly withdrawn and the court should give some instruction regarding the evidence that came in. Whether or not that justifies a new trial, if Mr. Gilmour is getting one anyway, I think the court could use, the district court could use some guidance as to the type of evidence that's permissible here. Okay. Thank you. Thank you all. I appreciate it very much. Again, we appreciate the pro bono counsel. Very helpful. The case just argued is submitted and the court stands in recess for the day. Thank you.
judges: Schroeder, M. Smith, Rakoff